DRUMMOND CITIZENS INSURANCE COMPANY
and ROLLER FUNERAL HOME *v.*
Chester SERGEANT, as Executor of the
Estate of Dorothy Mae MILLER, Deceased
and Elton KIRBY and Alan BLEVINS d/b/a
KIRBY-BLEVINS FUNERAL HOME

78-206                                          588 S.W. 2d 419

Opinion delivered October 1, 1979
(In Banc)

[Rehearing denied November 19, 1979.]

612

*H. B. Stubblefield* and *Terry Poynter*, for appellants.

*Ted H. Sanders*, for appellees.

J. V. SPENCER, III Special Justice. This appeal involves the proper contractual interpretation of three (3) burial certificates issued by the Baxter County Burial Association, and whether a restraining order should have been issued by hte lower court to protect an alleged contractual right.

The material facts are undisputed. The Baxter County Burial Association issued certificate No. 11022A in the amount of $300.00 to Dorothy Mae Miller, and later issued certificate No. 11950 in the amount of $500.00 to Pauline Iris Walton, and certificate No. 12067 in the amount of $500.00 to John E. Beam. The burial certificates state that they are

subject to the burial association by-laws, which are fully reproduced in the Miller certificate, and a general summary of the by-laws are reproduced in the Walton and Beam certificates. The by-laws as set forth in the Miller certificate are different from those set forth in the Walton and Beam certificates.

On May 25, 1973, the Baxter County Burial Association entered into a reinsurance contract, under the terms of which all existing burial certificates issued by Baxter County Burial Association were transferred to the appellant, Drummond Citizens Insurance Company, which assumed all contractual liability thereunder. Drummond Citizens Insurance Company had selected the appellant, Roller Funeral Home of Mountain Home, Arkansas, to furnish the funeral services and supplies. Both appellants have essentially common ownership and officers, and a common telephone number in Mountain Home, Arkansas.

On December 25, 1976, Dorothy Mae Miller died and the appellants were notified by Kirby-Blevins Funeral Home that Kirby-Blevins Funeral Home had been selected by the family of the deceased to handle the funeral, and they were asked if any benefits under the $300.00 burial certificate would be provided. The appellants responded that no services or merchandise would be provided unless Roller Funeral Home was allowed to furnish the entire funeral services and merchandise. Kirby-Blevins Funeral Home then proceeded with the funeral arrangements.

On June 25, 1977, John E. Beam died, and on July 20, 1977, Pauline Iris Walton died. Notice of each death was given by Kirby-Blevins Funeral Home to the appellants, who again refused to provide any services or merchandise unless Roller Funeral Home provided the entire funeral services and merchandise. Kirby-Blevins Funeral Home again proceeded with the funeral arrangements.

The appellant, Drummond Citizens Insurance Company, filed a petition in interpleader and tendered into the lower court $400.00 on an insurance policy which is not in issue and named the two appellees as respondents. The

appellee, Chester Sergeant, as executor of the estate of Dorothy Mae Miller counterclaimed for $300.00 on the Miller burial certificate and the appellees, Elton Kirby and Alan Blevins d/b/a Kirby-Blevins Funeral Home, as assignees of the Walton and Bean burial certificates counterclaimed for $500.00 on each of those certificates. The appellant, Drummond Citizens Insurance Company, prayed for injunctive relief restraining Kirby-Blevins Funeral Home from advertising that it would give credit on all burial insurance policies, regardless of the company with which the policy was carried. The appellant, Roller Funeral Home, intervened in the case, and adopted the pleadings of Drummond Citizens Insurance Company.

The lower court in its decree, dated October 26, 1977, referring only to the wording contained in the Miller burial certificate, found nothing in the certificates which provided that the burial association was not required to furnish benefits under the certificates unless it was allowed to furnish all of the funeral services through a director of its choice. It further found that the appellant, Drummond Citizens Insurance Company was not required to pay cash under these certificates to be used in purchasing services or merchandise from a funeral director not approved by the appellant, but having failed to furnish merchandise or services through its approved undertaker as provided in the certificate of a value equal to their face amounts, it was liable in case for the face amounts of the certificates. The lower court also denied any injunctive relief finding that appellants had failed to show by a preponderance of the evidence that the appellee, Kirby-Blevins Funeral Home, performed acts constituting unfair competition which resulted in any damage to the appellants.

The appellants have raised two points for reversal. First, the appellants contend that cash cannot be recovered under a burial certificate providing for a funeral service where the funeral service is tendered as provided in the contract; and secondly, that Kirby-Blevins Funeral Home should be enjoined from advertising that it will give full credit on burial certificates where the appellant, Roller Funeral Home, is designated to provide the funeral service.

The first contention must be placed in the context of the specific provisions of the three (3) burial certificates. The material portion of the by-laws in the Miller certificate reads as follows:

"4. When a member dies, the person in charge of the body shall at once notify the Secretary-Treasurer, who shall furnish the service and casket through an undertaker of his choice.

5. All members shall receive funeral, including services and casket in the amount specified in the class in which they held their benefit certificates.

The services and casket to members holding benefit certificates with the Baxter County Burial Association, shall be up to the standard of, and in keeping with the services and casket sold at similar prices by licensed embalmers and funeral directors of this and other towns in this territory. The funeral services to be furnished by this Association do not include any payment for any burial lot in any cemetery.

(a) If more expensive funeral than that furnished by the Association is desired, it may be arranged by the family of the deceased and the member's benefit applied on payment of same.

(b) The relatives in charge shall have the privilege of embalming, selecting clothing and casket, or any other merchandise or service of the funeral director."

In the Beam and Walton certificates, the material portion of the by-laws of the association contain the following language:

"Upon the death of a member of the Association, those in charge of the body of the deceased shall notify the Secretary-Treasurer, who shall have exclusive right to furnish funeral services and supplies, to be selected by those in charge of the body of the deceased and of the value equal to the face amount of the Membership Cer-

tificate, through a funeral director of the Secretary-Treasurer's choice. Funeral services and supplies shall be furnished a deceased member of the Association wherever he or she may be, upon notice to the Secretary-Treasurer. If the funeral Director customarily employed by the association issuing this certificate cannot service the body of the deceased on account of the distance to be traveled, then the Secretary-Treasurer shall employ another funeral director who can service the body. No cash shall be paid to the family or those in charge of the body of the deceased, but all amounts for which the Association is liable shall be applied in payment to the funeral director for the funeral services and supplies furnished by him. In such instances, the minimum shall be 70 per cent of the face amount of the certificate. The Association will not be held liable for any funeral arrangements, services or supplies made or furnished by any other that the Secretary-Treasurer of the Association."

We need not decide whether the apparent change in the association by-laws between the date of the issuance of the Miller burial certificate and the Beam and Walton burial certificates was binding on Dorothy Mae Miller, as that decision is not necessary to a decision in this case. We also note that Ark. Stat. Ann. § 66-1809, adopted as a part of Act 91 of 1953, provides that all burial associations shall have and maintain rules and by-laws as prescribed by the Burial Association Board. The record in this case does not reflect what by-laws were prescribed for burial associations at the time of the reinsurance contract or at the time of death of each of the certificate holders, so we need not decide whether any such prescribed by-laws were binding on these certificate holders. All the parties have placed reliance on the by-law provisions as previously set forth.

Burial associations arose out of the depression years in our country for the mutual benefit of those who desired assurance at a modest price that they would be given a decent and proper burial. The Baxter County Burial Association was incorporated in 1935. The one distinguishing and laudatory characteristic of these burial associations was that

a person was guaranteed a complete and respectable funeral. Arkansas first recognized burial associations by statute through Act 264 of the 1933 Acts of Arkansas. In 1953, Act 91 of 1953, *inter alia,* created the Arkansas Burial Association Board, redefined a Burial association, and limited the amount of benefits provided to any member of an association to not more than $500.00.

As the cost of funeral services and merchandise increased over the years, the by-laws of the associations were changed so that many associations no longer guaranteed a complete funeral. This evolution can be recognized in the wording of the earlier Miller burial certificate as opposed to the wording in the later Walton and Beam burial certificates. A reasonable interpretation of the material portions of the Miller certificate indicates that a complete funeral was guaranteed by the burial association, including services and casket for the sum of $300.00. Although a $300.00 complete funeral is difficult to imagine in our present economy, this was the obligation of the association. However, in the certificates issued later by the association, the language indicated that a complete funeral was not intended, but that the association would have the exclusive right to furnish services and supplies of a value equal to the face amount of the certificate to be selected by those in charge of the body.

The appellants have placed considerable reliance on the case of *Lowery* v. *American Burial Association,* 70 So. 2d 38 (1954), from our sister state of Mississippi, involving a 1936 funeral benefit contract which provided a complete funeral valued from $35.00 to $125.00 depending on the number of years of membership in the burial association. In 1952, the contract holder died and the association agreed to furnish a complete funeral valued in the amount of the contract. However, the husband of the deceased used the services of a funeral home not authorized by the burial association and called upon the association to furnish a casket for his wife's body. The policy provided that the policy amount could be used by the family in any way desired such as for casket, hearse service, embalming, etc. The court stated that it was plainly apparent that this contemplated that the benefits, whatever furnished, are required to be furnished through the

facilities of the association, and since the association offered full performance of its contract by furnishing through its facilities a complete funeral, including casket, robe, and hearse service as valued in the contract, it was guilty of no breach of its contract.

We agree that the benefits both in that case and in the case at bar were required to be furnished through the facilities of the association. We do not agree, however, that the facilities of the association could not be used by the family of the deceased for the selection of funeral services or supplies up to the value of the policy, unless complete services were provided by the association. It should also be noted that the policy language in the Lowery case may be distinguished from the language contained in the Walton and Beam certificates as those later certificates do not provide for a complete funeral. We have reviewed the record before us in considerable detail, and the record is unclear as to whether the appellants tendered a complete funeral valued at $300.00 on the Miller certificate, but regardless, our decision on this point would remain unchanged.

This court has previously held that a burial association certificate is so similar to a policy of insurance that the recognized rules of construction governing such policies are applicable. *Anderson* v. *Frank Reid Burial Association, Inc.,* 218 Ark. 817, 239 S.W. 2d 12 (1951).

It is our opinion that the by-law provisions in all three (3) certificates suffer from ambiguity, and in such circumstances, the court will adopt that interpretation which is most favorable to the insured or his beneficiary. 46 CJS *Insurance* Sec. 1468, p. 802; *Woodman of the World Life Ins.* v. *Reese,* 206 Ark. 530, 176 S.W. 2d 708 (1943).

A principal of insurance law firmly established in our state is that provisions contained in a policy of insurance must be construed most strongly against the insurance company which prepared it, and if a reasonable construction may be given to the contract which would justify recovery, it would be the duty of the court to do so. *Traveler Indemnity Company* v. *Imogene Hyde,* 232 Ark. 1020, 342 S.W. 2d 295 (1961).

It is a cardinal rule of insurance law that a policy of insurance is to be construed liberally in favor of the insured and strictly against the insurer or, as more fully stated, if the language employed is ambiguous, or there is doubt or uncertainty as to its meaning and it is fairly susceptible of two interpretations, one favorable to the insured and the other favorable to the insurer, the former will be adopted. 44 CJS *Insurance* Sec. 297 c. (1), p. 1166; *First Heritage Life Assurance Company* v. *James K. Butler,* 248 Ark. 1164, 455 S.W. 2d 135 (1970).

A reasonable construction of the material provisions of the burial certificates would indicate that those in charge of the body have the right to select those funeral services and/or supplies of a value equal to the face amount of the certificate from the designated funeral home of the burial association or its assigns. We find no requirement in the certificate that the family or those in charge of the body must allow the funeral home so designated to furnish the complete funeral on penalty of forfeiture of all benefits.

The refusal of the appellant, Drummond Citizens Insurance Company, to provide services and merchandise to the extent of the value of the certificates constituted a breach of the contractual provisions. Although the certificates do not provide cash benefits, since the funeral services and merchandise have already been provided for the deceased certificate holders, monetary awards for the face value of the certificates are justified as the proper measure of damages for the contractual breach of each of the certificates.

The second point raised by the appellants is whether the lower court shall have enjoined Kirby-Blevins Funeral Home from advertising that it would give full credit on burial certificates where Roller Funeral Home is designated to provide the funeral service, or as restated by the appellants, that Kirby-Blevins Funeral Home should be enjoined from intentionally interfering with the contracts and business expectancies of appellants. The appellants state in their brief as follows:

Such advertising wrongfully deprives Appellant Roller

Funeral Home of its vested right and business expectancy of providing the benefits under the burial certificates as well as depriving it of the business expectancy in furnishing merchandise and service over and above the amount of benefits provided in the policy or certificate involved.

Since it is our opinion that the Drummond Citizens Insurance Company, through its designated funeral home, Roller Funeral Home, had the contractual right and obligation to furnish benefits under the burial certificates to the extent of their face value, but did not have the contractual right to furnish merchandise and service over and above the amount of the benefits, such advertising by Kirby-Blevins Funeral Home does not interfere with any valid contractual right of the appellant, Roller Funeral Home. Certainly, the right of Roller Funeral Home to provide benefits to the extent of the value of the certificates is not compromised or endangered by this advertising as demonstrated by the request of Kirby-Blevins Funeral Home for benefits under the certificates. It is a fact of human nature, not susceptible of argument, that beneficiaries desire the benefits of insurance contracts. We feel confident that the appellants will be given the opportunity to provide all benefits as set forth in all the burial certificates which were reinsured by the appellant, Drummond Citizens Insurance Company.

We can understand the desire of appellants to furnish a complete funeral service at a cost in excess of the value of the burial certificates, but under the certificates, they neither have this right as a matter of contract, nor can they deny benefits because another funeral home is selected for additional services or merchandise.

An injunction is an extraordinary remedy, and like mandamus and prohibition, is one which is reserved for extraordinary circumstances. It is our opinion that an injunction should not be granted where the contract does not plainly confer the right to be protected, and, in this case, we find no contractual right that commands protection. Cf; 43A CJS *Injunctions,* Sec. 90, p. 113.

The decree of the lower court is accordingly affirmed.

FOGLEMAN, BYRD and PURTLE, JJ., not participating.

Special Justice C. B. NANCE, JR., joins in the opinion.

HARRIS, C.J., and HOLT, J., dissent.

FRANK HOLT, Justice, dissenting. I respectfully dissent from the majority opinion which holds the certificates ambiguous. In my view, the certificates in effect provide that the designated funeral home has the exclusive right to provide funeral services and that the Association is not liable for funeral services or supplies furnished by another. Since the holders of the certificates chose to avail themselves of the services and merchandise of a funeral home other than the one designated and approved by the appellant insurance company, they are not entitled to any cash benefits under the certificates.