CNA INSURANCE COMPANY *v.*
James Ralph McGINNIS and Vicky Lynn HILLS

CA 83-88                                    663 S.W.2d 182

Court of Appeals of Arkansas
En Banc
Opinion delivered January 18, 1984

[Rehearing denied February 8, 1984.*]

*CRACRAFT, CLONINGER and CORBIN, JJ., would grant rehearing.

*Davis, Cox & Wright,* for appellant.

*Sexton, Nolan & Robb, P.A.,* and *Jones, Gilbreath & Jones,* by: *Kendall·B. Jones,* for appellee.

JAMES R. COOPER, Judge. The appellant, CNA Insurance Company, filed a declaratory judgment action against the appellees, James Ralph McGinnis and Vicky Lynn Hills, seeking an adjudication that it had neither the duty to defend a federal court action pending between the appellees, nor the duty to pay any judgment which might be entered in that case. This appeal follows a decision by the trial court that the appellant was not entitled to the declaratory relief sought; that the appellee McGinnis was entitled to declaratory relief on his counterclaim; and therefore he was entitled to a defense by appellant, as well as payment of any judgment up to the policy limits, plus a 12% penalty and attorney's fees. We affirm.

The appellee Hills had filed suit against McGinnis, her step-father, in federal court, seeking $150,000.00 in damages for injuries allegedly received as a result of sexual assaults and abuse by the appellee McGinnis. The appellant refused to defend McGinnis, and then filed this action for declaratory judgment.

The appellant issued a homeowners policy to McGinnis which covered the Fort Smith residence where the alleged sexual assaults took place. The policy period was from June 29, 1978 to June 29, 1979, during which time Hills was 16 years old. The appellant contended that there was no insurance coverage under its policy of insurance for the conduct alleged by Hills and that it had no duty to defend McGinnis or to pay any judgment which might be entered by reason of both a lack of coverage and the exclusionary provisions of the policy. The pertinent exclusionary clause in the policy states as follows:

> Exclusions. There are certain instances which we do not intend to cover for liability. Under this policy,

liability to others and medical expenses do not apply to personal injury or property damage:

    1.   Which is expected or intended by an insured.

The appellant had the burden of establishing that the acts which allegedly caused damage or injury fall within this exclusionary clause. *Riverside Insurance Co. of America* v. *McGlothin,* 231 Ark. 764, 332 S.W.2d 486 (1960). Insurance policies must be construed liberally so as to resolve doubts in favor of the insured, both as to coverage and exclusions. *First Heritage Life Assur. Co.* v. *Butler,* 248 Ark. 1164, 455 S.W.2d 135 (1970).

On appeal, the appellant argues that the trial court erred in finding that it had a duty to defend McGinnis as well as pay any judgment entered in the federal court action pending between the appellees.

The chancellor, in a well-reasoned opinion, analyzed the law relative to an insurance carrier's duty to defend and to pay damages, as well as the law concerning the interpretation of exclusionary clauses. He then found that, regarding the exclusion from coverage of damages resulting from intentional acts, the rule in Arkansas was that recovery was not precluded where the results of intentional acts were accidental or unintended. The trial court found that while McGinnis intended to commit the acts complained of, the appellant had not met its burden of proof in establishing that he either intended or expected any injury or damage to his step-daughter. We think the chancellor correctly analyzed the evidence and the law, and that his decision was correct.

*Talley* v. *MFA Mutual Ins. Co.,* 273 Ark. 269, 620 S.W.2d 260 (1981) is controlling. There the Arkansas Supreme Court stated:

> We see no violation of public policy in allowing recovery in circumstances in which it is shown the results were accidental or unintended. Nor do we adopt the tort concept that cne intends the natural and

foreseeable consequences of his acts so as to bar recovery from unintended results.

In the case at bar, there was no direct evidence presented which tended to prove that McGinnis intended to inflict harm or damage upon Hills. In fact, the evidence was to the contrary. Therefore, the only way to find that he intended harm to result would be to find that harm was a natural and foreseeable consequence of his acts, and that approach was specifically rejected in *Talley*.

We find no error.

Affirmed.

MAYFIELD, C.J., and GLAZE, J., agree.

CORBIN, CLONINGER, and CRACRAFT, JJ., dissent.

DONALD L. CORBIN, Judge, dissenting. This is a case of the cart pulling the horse. It is yet another example of the unnecessary rigidity of our precedent-following system of jurisprudence.

The majority relies on *Talley* v. *M.F.A. Mutual Ins. Co.*, 273 Ark. 269, 620 S.W.2d 260 (1981), as the controlling case law to be applicable to the facts of the case at bar. The issue presented in *Talley, supra,* was whether the liability policy provided coverage for the unintended results of an intentional act. It arose out of a shooting incident involving an altercation between three boys at a party. The trial court there granted appellee MFA's motion for summary judgment based on the pleadings and affidavits, finding appellee MFA had no liability under the terms of the policy. Exclusionary language in the homeowner's policy stated that the policy did not cover bodily injury which was either expected or intended from the standpoint of the insured. In reversing and remanding the decision of the trial court, the Supreme Court held that it did not adopt the tort concept that one intends the natural and foreseeable consequences of his acts so as to bar recovery for unintended results. It concluded by finding that a fact issue existed as to whether

appellant Davis intended to hit or injure appellants Talley and Evans and that the award of summary judgment constituted reversible error.

In *Nat'l. Inv. Life & Cas. Ins.* v. *Arrowood,* 270 Ark. 617, 606 S.W.2d 97 (Ark. App. 1980), the Arkansas Court of Appeals construed an exclusionary clause in a homeowner's insurance policy which provided:

> This policy does not apply:   1.  Under Coverage E — Personal Liability . . . f. To bodily injury or property damage which is either expected or intended from the standpoint of the insured.

That case also arose from a shooting incident wherein appellee James Arrowood shot his former wife at the parties' home, the possession of which had been awarded to the wife in a divorce action. Appellants contended that appellee Sandra Arrowood's injury was intentionally caused by appellee James Arrowood and, therefore, liability coverage was excluded under the policies. The trial court found that the insurance companies had failed to meet the burden of proving that the exclusions were applicable. The Court of Appeals held that the judgment of the trial court was clearly against the preponderance of the evidence and reversed and remanded. The Court noted that although there was no authority within this jurisdiction, many cases from other jurisdictions did exist. It determined that no two cases were factually identical and it was essentially a matter of gleaning the intent behind human transactions and the outcome was dependent on the judgment of common sense and experience as applied to human behavior. However, the Court stated that it was not confronted with reconciling an intentional act with an unintended result.

I believe that the facts and evidence in the case at bar are distinguishable from those of *Talley, supra.* That case involved a shooting incident between young boys who were not of the same household and the issue was whether the resulting damages were intended or accidental because of the negligence of the perpetrator.

Appellees contend that the evidence and testimony presented in the instant case clearly shows that appellee McGinnis did not intend or expect appellee Hills to sustain injuries by virtue of his having sexual intercourse with her covering a period from the time she was six to sixteen years of age. A review of the record reveals that there was evidence at trial that appellee McGinnis also engaged in sexual relations with appellee Hills' older twin sisters and that the girls ran away from home as a result of that sexual abuse. Appellee McGinnis testified that he agreed that after he had sex with the girls, at least two of them ran away from home. He stated that he believed the girls used that as an "excuse" to run away from home. In particular, appellee McGinnis testified that when Marlene left after he attempted to have sexual intercourse with her, "It hurt her and I stopped and she ran away from home the next day or so. This was in St. Joseph and she did run away after I tried to have sex with her." Thereafter; appellee McGinnis testified that the entire family received family counseling. Appellee McGinnis and family later moved to Fort Smith, Arkansas, and it was during the period between June 29, 1978, to June 29, 1979, the effective dates of the policy, that appellee Hills claims to have been additionally sexually assaulted and abused by appellee McGinnis. Appellee McGinnis admitted to having had sexual relations with appellee Hills over a ten-year period and stated: "I had no reason to believe that there would be any harm or injury sustained by Vicky from my activities with her, based upon the fact no ill effects accrued in the other girls."

I have to agree with appellant CNA that for appellee McGinnis to engage in a continuing course of sexual assault and abuse of his step-daughter, Vicky, from the time she was six years of age until the time she was sixteen, and then to claim that he did not expect or intend to cause injury, flies in the face of all reason, common sense and human experience. I find this to be true in spite of the testimony of Dr. Douglas A. Stevens, a psychologist and witness for appellee McGinnis, to the contrary. Furthermore, a determination of insurance coverage under these facts and circumstances would constitute a manifest violation of public policy. Exclusionary clauses are designed and are approved to

protect the insurance companies from collusive claims and are generally enforced according to their terms. *State Farm Mutual Ins. Co. v. Cartmel*, 250 Ark. 77, 463 S.W.2d 648 (1971).

An act of sexual abuse perpetrated upon a minor child by a custodial adult is so reprehensible that we should recognize it as causing irreparable harm. Surely, it is reasonable to say that a person who performed the act intended the resulting harm as a matter of law given these facts. To say that a man who sexually assaults a minor female who is a member of his household does not intend harm, is a demonstration of our system's insensitivity to the tender psyche of that child.

We believe the facts and evidence in the case at bar are closely analagous to those of *Fireman's Fund Ins. Co. v. Hill*, 314 N.W.2d 834 (Minn. 1982). There, appellant brought a declaratory judgment action to determine whether sexual activities engaged in by its insured, appellee, were covered under a homeowner's policy. The trial court found that appellant was obligated to defend appellee in a civil action brought on behalf of a foster child and to pay damages for which appellee might become liable. On appeal, the Minnesota Supreme Court held that the intention to cause injury would be inferred as a matter of law when a foster custodial parent engaged in sexual activities with a minor child in his custody, thus precluding coverage under the homeowner's policy. The policy at issue there contained a provision which excluded "bodily injury or property damage which is either expected or intended from the standpoint of the insured." Appellee and his wife took foster children into their home. The Hennepin County Welfare Department received a complaint from the parents of one of the former foster children in appellee's care, alleging that appellee had molested the child. When he was confronted with the allegations, appellee denied having any sexual contact with the child. Later, a minor male child placed in his custody told authorities that during the fifteen months he was in appellee's home, appellee engaged in sexual conduct with him. Appellee contended that he did not intend to harm the boy and that his actions were the

result of his social and emotional immaturity. An action was later commenced on behalf of the boy for mental pain and anguish resulting from the assault by appellee. It was during this period of time when the boy was in the appellee's home that appellee was insured by appellant under a homeowner's policy. In reversing the decision of the trial court, the Supreme Court noted that the facts indicated that appellee intended to engage in sexual activities and that he knew that the welfare department would disapprove of his activities. Before the boy was placed in appellee's home, appellee had been confronted by the welfare department with allegations that he had sexually assaulted other foster children. Appellee knew the welfare department viewed his conduct as detrimental to the boy. The court held that those facts gave rise to an inference of intent to inflict injury and appellee's acts were excluded from coverage under the insurance policy. In reaching this conclusion, the Minnesota Supreme Court cited an earlier case, *Continental W. Ins. Co.* v. *Toal,* 309 Minn. 169, 244 N.W.2d 121 (1976), to-wit:

> In *Caspersen* v. *Webber,* 298 Minn. 93, 99, 213 N.W.2d 327, 330 (1973), we indicated that an injury is expected or intended from the standpoint of the insured if a reason for an insured's act is to inflict bodily injury or when the character of the act is such that an intention to inflict an injury can be inferred as a matter of law.

In the instant case, appellee McGinnis admitted to his sexual abuse of both appellee Hills as well as her older sisters. Regardless of appellee McGinnis' testimony to the effect that he never intended any harm or injury, he had to have been aware of such injury in view of the fact that the entire family had previously received counseling on the matter of his sexual abuse as well as the girls' running away from home. I would find that these actions are of such a calculated nature that we can infer an intention to inflict injury as a matter of law and reverse, holding that the trial court erred in finding that appellant CNA had a duty to defend appellee McGinnis as well as pay any judgment up to its policy limits in the federal district court action, a 12% penalty and attorney's fees.

CRACRAFT and CLONINGER, JJ., join in this dissent.