ARKANSAS BURIAL ASSOCIATION, Shinn Burial
Association and Arkansas Burial Association Board
*v.* DIXON FUNERAL HOME, INC.

CA 87-440                                    751 S.W.2d 356

Court of Appeals of Arkansas
En Banc
Opinion delivered June 8, 1988

*Gardner, Gardner & Hardin*, by: *Stephen C. Gardner* and *Steve Clark*, Att'y Gen., by: *Arnold Jochums*, for appellants.

*Witt Law Firm, P.C.*, by: *Ernie Witt*, for appellee.

JOHN E. JENNINGS, Judge. Between 1982 and 1985, appellee Dixon Funeral Home, Inc., (Dixon) provided funeral services for 17 people. Ten of them had burial certificates written by Shinn Burial Association (Shinn) and seven had burial certificates written by Arkansas Burial Association (Arkansas Burial). Each certificate provided that the burial association's affiliated funeral home would provide, on the death of the certificate holder, funeral services of a stated value ranging from $200.00 to $500.00.

In each case Dixon took an assignment of the certificate from the family of the deceased and gave credit for the face amount of

the certificate. Dixon then sued Shinn and Arkansas Burial for the face amount of each certificate. It was stipulated at trial that in every instance but one Dixon did not notify the burial association of the member's death prior to the funeral. Notice was given to Arkansas Burial Association of the death of Carmen Nelms. The Arkansas Burial Association Board (the Board) intervened in the lawsuit on the side of Shinn and Arkansas Burial.

The primary issue in the trial court was whether, under the terms of the variously worded certificates, Dixon's failure to give notice of death resulted in a forfeiture of benefits.

The trial court held that the notice provisions contained in the certificates issued by Arkansas Burial were unambiguous; therefore, Dixon had forfeited any rights to benefits under these certificates. The court further found that the notice provisions contained in Shinn's certificates were ambiguous and awarded Dixon judgment against Shinn in the amount of $2,700.00, representing the total of the face amounts of the certificates. Finally, the court awarded Dixon judgment against Arkansas Burial for $500.00, the face amount of the Nelms certificate.

We affirm the trial court's holding as to the Arkansas Burial certificates, including the Nelms certificate, but reverse the decision as to the Shinn certificates.

The history of burial associations was discussed by the supreme court in *Drummond Citizens Ins. Co.* v. *Sergeant*, 266 Ark. 611, 588 S.W.2d 419 (1979):

> Burial associations arose out of the depression years in our country for the mutual benefit of those who desired assurance at a modest price that they would be given a decent and proper burial. . . . The one distinguishing and laudatory characteristic of these burial associations was that a person was guaranteed a complete and respectable funeral. . . . As the cost of funeral services and merchandise increased over the years, the bylaws of the associations were changed so that many associations no longer guaranteed a complete funeral.

266 Ark. at 617-18, 583 S.W.2d at 422.

■ Appleman says that such associations were often started by enterprising undertakers, who themselves might undertake to provide the necessary burial services. 1 J. Appleman, *Insurance Law and Practice* § 14 (1981). As the court said in *Drummond*, the General Assembly first recognized burial associations in Act 264 of 1933. Act 91 of 1953 created the Arkansas Burial Association Board, redefined burial association, and limited benefits to $500.00.

■ Burial association certificates are not insurance, *Herndon* v. *Wasson*, 188 Ark. 329, 66 S.W.2d 633 (1933), but are so similar that the rules of construction governing insurance policies are applicable. *Anderson* v. *Frank Reid Burial Association, Inc.*, 218 Ark. 817, 239 S.W.2d 12 (1951).

Ron Oliver, the Executive Secretary of the Board, testified that burial associations cannot exist on their own but must be associated with a funeral home which subsidizes them to a certain extent. He explained that premiums were originally structured to provide a decent burial at the lowest possible cost and that the aim of the burial associations was not to make money but to try to break even. He testified that the average cost of a funeral today is approximately $2,500.00. He said that consistent payment of the full face amount of the certificates would adversely affect the solvency of any burial association. He testified that the Board is mainly but not entirely concerned with the consumer.

Oliver also testified that the reason for the notice provisions in the certificates was to permit the funeral home associated with the burial association to provide services or merchandise in an amount equal to the value of the certificate. Other witnesses testified that it was the custom in the industry for funeral homes to enter into reciprocal agreements to pay each other a percentage of the face value of the certificates in lieu of furnishing goods or services.

■■ We cannot agree with the trial court that the notice provisions in the Shinn certificates were ambiguous. While we do not set aside a trial court's finding of fact unless it is clearly erroneous, Ark. R. Civ. P. 52, the determination of whether a contract is ambiguous is a matter of law. *C. & A. Construction Co.* v. *Benning Construction Co.*, 256 Ark. 621, 509 S.W.2d 302 (1974); *Gilstrap* v. *Jackson*, 269 Ark. 871, 601 S.W.2d 270 (Ark.

App. 1980). The rule of strict construction does not mean that courts may strain the construction of ordinary terms in the contract to create ambiguity where one does not appear. *Services & Exchange Commission* v. *Arkansas Loan & Thrift Corp.*, 297 F. Supp. 73 (W.D. Ark. 1969).

By way of example, the certificate issued by Arkansas Burial for Fowler said:

> Failure to notify the Secretary-Treasurer of the death of a member within the service area of the Association before burial shall relieve the Association of liability under the certificate of such deceased member.

The certificate issued to Donnel by Shinn contained precisely the same language. We cannot agree that one is ambiguous and the other unambiguous.

The certificate issued for Stafford by Arkansas Burial provided:

> Certificate holders shall notify that office of the secretary or the funeral director named on the folded face of this certificate immediately after any death, and failure to do so within 24 hours shall forfeit all right of benefits in relation to said debt.

The certificate issued to Gray by Shinn provided:

> Upon the death of a member of the association, those in charge of the body of the deceased shall notify the president or secretary who shall have the exclusive right to furnish funeral services . . . . Failure to notify the president or secretary of the death of a member before he or she is buried shall forfeit all rights of the deceased to the benefits under his or her certificate of membership.

Again, the certificates are equally clear: benefits are not payable unless notice of death is given.

Dixon relies on *Drummond, supra* and *Gregg Burial Association* v. *Emerson*, 289 Ark. 47, 709 S.W.2d 401 (1986). The certificates in those cases were similar to those we have in the case at bar. In *Drummond*, the certificates seemed to say that the funeral home selected by the burial association had the exclusive

right to furnish the funeral. The burial association there contended that, unless its associated funeral home furnished the funeral, no benefits were payable. The court held that provision to be ambiguous and therefore, the family of the deceased could select which funeral home it wanted to provide the funeral. The court in *Drummond* upheld the trial court's finding that although the burial association was not required to pay cash under the terms of the certificate, having failed to furnish merchandise or services of a value equal to the face amount of the certificate, it was liable in cash for the face amount.

In *Gregg*, the court simply declined to overrule its earlier holding in *Drummond*. In both *Gregg* and *Drummond* it was stipulated that notice of death had been given. Neither case involved the validity of the notice provisions in the certificate and therefore neither case is in point. The certificates in the case at bar may well be ambiguous as to the exclusive right of the associated funeral home to perform the funeral, under the holding in *Drummond*, but that is not the issue here.

Dixon argues that notice should be excused in this case because one of the appellant's witnesses who was an undertaker testified that he thought the certificate gave his funeral home the exclusive right to bury the certificate holder. While Dixon is correct that this position is untenable under the holding of the supreme court in *Drummond* we do not agree that this opinion expressed at trial dispenses with the necessity of notice.

On cross-appeal Dixon argues that the notice provision in the certificates is unconscionable and therefore should not be enforced. At trial, Mr. Dixon testified that the reason he thought the notification requirement was unconscionable was that it was too expensive to draft and mail a letter. There was other testimony, however, that it was the custom in the industry to simply make a telephone call. Article 26 of the Board's bylaws provides that failure to notify the burial association of death, prior to burial, relieves the association of liability. The Board is given the authority to regulate the industry by Ark. Stat. Ann. § 66-1801 *et seq.* (Repl. 1980). Section 66-1823 provides that the regulations promulgated by the Board "shall have the full force and effect of statute." In his application for authority to operate his own burial association, Mr. Dixon expressly agreed to comply

with all regulations of the Board. Oliver testified that notice prior to burial has always been one of the Board's bylaws and regulations. On these facts, we hold that the notice provisions in the various certificates are not unconscionable.

■ Dixon also argues that the notice provision constitutes an unfair restraint of trade. We cannot consider this argument because it was not raised in the trial court. *McIlroy Bank & Trust v. Swen Day Builders of Arkansas, Inc.*, 1 Ark. App. 121, 613 S.W.2d 837 (1981).

■ Finally, appellants contend that it was error for the court to award Dixon judgment for $500.00, the face value of the Nelms certificate. We disagree. It was stipulated that Arkansas Burial received notice. Mrs. Nelms died in Waveland and the body was taken to Humphrey Funeral Home, which is associated with Arkansas Burial. There, the body was embalmed, at a cost of $260.00, before it was picked up by Dixon Funeral Home and taken back to Danville for the funeral. It is undisputed that Dixon paid Humphrey for the embalming. Under the certificate, and the holdings in *Drummond* and *Gregg*, it was the obligation of the associated funeral home, once notice was given to its burial association, to tender goods or services in an amount equal to the value of the certificate, in this case $500.00. The trial court found that such a tender was not made and that finding is not clearly wrong.

On direct-appeal we affirm the trial court's holding as to the Arkansas Burial certificates and the Nelms certificate and reverse the court's holding as to the Shinn certificates and remand to the circuit court for an entry of an order consistent with this opinion. We affirm on cross-appeal.

Affirmed in part, reversed in part, and remanded on appeal. Affirmed on cross-appeal.

COOPER and MAYFIELD, JJ., agree.