Melinda WILLIAMS, Guardian of the Estate of James Elam *v.*
FIRST UNUM LIFE INSURANCE COMPANY

04-173 188 S.W.3d 908

Supreme Court of Arkansas
Opinion delivered June 24, 2004

Appellant, *pro se.*

*Watts, Donovan & Tilley, P.A.*, by: *David M. Donovan*, for appellee.

ROBERT L. BROWN, Justice. Appellant Melinda Williams, as guardian of the estate of James Elam (Elam), appeals the circuit court's judgment in favor of appellee First Unum Life Insurance Company (First Unum) following a three-day jury trial. This court previously reversed and remanded this matter for a trial on the merits. *See Elam v. First Unum Life Ins. Co.*, 346 Ark. 291, 57 S.W.3d 165 (2001) (reversed award of summary judgment to First Unum and remanded for a jury trial on issue of whether the term "mental illness" as used in the insurance policy is ambiguous with respect to Elam's diagnosis of bipolar affective disorder) (*Elam I*). First Unum also cross appealed on the issue of the admissibility of testimony regarding Elam's alleged past drug usage. We affirm the judgment of the circuit court.

In 1983, Elam went to work for Shearson & Leaman and continued his employment selling securities for over ten years. In 1993, Elam elected coverage under an insurance policy provided by his employer, then known as Smith-Barney-Shearson, for his disability due to a bipolar affective disorder.[1] After receiving benefits for two years from First Unum for this disability, First Unum declined further benefits "because of a twenty-four-month policy limitation applicable to disability due to mental illness." *Elam I*, 346 Ark. at 293, 57 S.W.3d at 166. Elam then filed suit against First Unum asserting that bipolar affective disorder is not a

---

[1] In *Elam I*, we say that Elam "elected" coverage in 1994. *See Elam I*, 346 Ark. at 293, 57 S.W.3d at 166. The record reveals that Elam "enrolled" for coverage in 1993 and received benefits from August 1994 to August 1996.

"mental illness" within the policy's definition and, therefore, is not subject to the twenty-four-month limitation of benefits.

The circuit court granted summary judgment to First Unum and found that the plain, ordinary meaning of the term "mental illness" as used and defined in the First Unum policy encompassed bipolar affective disorder. Elam appealed and this court reversed in *Elam I*, stating:

> We cannot say that the term "mental illness" is ambiguous looking only to the face of the policy. Rather, the only way that term may become ambiguous is by looking to the conflicting evidence submitted by the parties, which included the affidavits and depositions of three physicians, an excerpt from the DSM-IV, and articles from various sources. Both parties went beyond the four corners of the policy and relied on this extrinsic evidence to support their respective interpretations of the term "mental illness." . . . Accordingly, the trial court erred in resolving this issue as a matter of law by granting summary judgment to First Unum. We therefore reverse the trial court's judgment and remand for the jury to resolve whether, based on the disputed extrinsic evidence offered by the parties, the term "mental illness," as it is used and defined in the policy, is ambiguous as it applies to Elam's diagnosis of bipolar affective disorder. In resolving this issue, the jury shall be instructed on the relevant law regarding construction of an insurance contract.

*Id.* at 297-98, 57 S.W.3d at 170.

Following remand and the three-day jury trial, the jury returned a verdict in favor of First Unum and answered these interrogatories:

> INTERROGATORY NO. 1: Do you find from a preponderance of the evidence, based upon the evidence offered by the parties, that the term "mental illness," as it is used and defined in the policy, is ambiguous as it applies to James Elam's [d]iagnosis of bipolar affective disorder?
>
> ANSWER: No.
>
> INTERROGATORY NO. 2: If you answered ye[s] to interrogatory No. 1, then return to the courtroom. If you answered no, then answer this interrogatory: Do you find from a preponderance of the evidence that bipolar disorder is a mental illness?

ANSWER: Yes.

The circuit court then entered judgment in favor of First Unum.

### I. General Contract Instructions

Elam first contends that the circuit court erred by failing to instruct the jury on the "relevant law regarding construction of an insurance contract," which this court required in our opinion in *Elam I.* Specifically, Elam maintains that the circuit court erred by instructing the jury on the law relating to general contract interpretation rather than the law relating. to the interpretation of insurance contracts. He asserts that he proffered instructions to the circuit court to the effect that any ambiguity in insurance policies should be strictly construed against the insurer and that it is the jury's duty to allow the insured to recover if a reasonable construction could be given to the policy to justify recovery. He claims in this appeal that the general contract instructions, which were given, conflict with the insurance–contract instructions proffered. Elam also argues that the jury failed to consider the instructions as a whole, as instructed by the court when it gave Arkansas Model Jury Instruction 103(b). Finally, Elam cites *Skinner v. R.J. Griffin & Co.,* 313 Ark. 430, 855 S.W.2d 913 (1993), for the proposition that a party has no burden to prove prejudice when a circuit court gives an erroneous jury instruction.

We first address our standard of review. This court has consistently held that a party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction. *See, e.g., Southern Farm Bureau Cas. Ins. Co. v. Daggett,* 354 Ark. 112, 118 S.W.3d. 525 (2003). Moreover, this court will not reverse a trial court's refusal to give a proffered instruction unless there was an abuse of discretion. *Id.* Finally, we have said that it is not error for the trial court to refuse a proffered jury instruction, when the stated matter is correctly covered by other instructions. *Id.*

In *Elam I,* this court instructed the circuit court to determine whether the term "mental illness," as used in Elam's insurance policy, was ambiguous as it applied to bipolar affective disorder in light of the disputed extrinsic evidence offered by the parties. At the ensuing trial on remand, Elam proffered the following jury instructions, which he maintained were consistent with insurance contract law but which the circuit court refused to give:

Insurance policies must be construed liberally so as to resolve all doubts in favor of the insured, both as to coverage and exclusions[, citing *First Heritage Life Assur. Co. v. Butler*, 248 Ark. 1164, 455 S.W.2d 135 (1970), and *CNA Ins. Co. v. McGinnis*, 10 Ark. App. 234, 663 S.W.2d 182 (1984)].

If you find the policy susceptible to two interpretations, one favorable to James Elam and one favorable to the First Unum Life Insurance Company, the interpretation favorable to Jim Elam must be adopted[, citing *Drummond Citizens Ins. v. Sergeant*, 266 Ark. 611, 588 S.W.2d 419 (1979)].

Any ambiguity in the insurance policy is to be strictly construed against First Unum Life Insurance Company who prepared the policy[, citing *Travelers Indemnity Co. v. Hyde*, 232 Ark. 1020, 342 S.W.2d 295 (1961), and *Geurin Contr. v. Bituminous Cas. Corp.*, 5 Ark. App. 229, 636 S.W.2d 638 (1982)].

If a reasonable construction can be given be given [*sic*] to the policy which would justify recovery to the insured, James Elam, it is your duty to do so[, citing *Travelers Indemnity Co. v. Hyde, supra, Home Indem. Co. v. City of Marianna*, 297 Ark. 268, 761 S.W.2d 171 (1988), and *Drummond Citizens Ins. v. Sergeant, supra*].

The circuit court, however, gave the following instructions to the jury:

In determining the meaning of the language, you may take into consideration the language of the contract, the circumstances surrounding the making of the contract, the subject of the contract, the purpose of the contract, the situation in relation of the parties at the time the contract was made, and the parties' subsequent course of performance.

You should give the words of the contract their plain, ordinary and usual meaning unless it is clear that certain words were intended to be used in a technical sense.

You should give weight to the meaning placed on the language by the parties themselves as shown by their statements, acts, or conduct after the contract was made.

If you cannot decide the intention of the parties after considering the instructions that I have already given you concerning the

interpretation of the ambiguous language in the contract, then you should interpret the ambiguous language against the party who prepared the contract.

■ This court in *Southern Farm Bureau Cas. Ins. Co. v. Daggett, supra,* stated that a circuit court does not err in refusing to admit proffered jury instructions if the proffered matter is correctly covered by other instructions. In this case, the court instructed the jury to construe the contract in favor of Elam if the jury found the term "mental illness" to be ambiguous. This was the gist of Elam's proffered instructions. We hold that the court did not abuse its discretion in refusing to give Elam's instructions.

## II. Expert Witnesses

Elam next claims that the circuit court erroneously excluded the proffered expert testimony of attorney Gail Matthews, via deposition, because the jury was charged with determining whether the term "mental illness" was ambiguous as a question of fact, and the expert testimony of Mr. Matthews regarding ambiguity was relevant. Elam argues that courts from other jurisdictions have found it proper to allow expert testimony for the jury to understand and apply the terms of a contract, but that Arkansas has no case law on the admissibility of expert testimony for interpreting ambiguous contractual language. Elam further argues that this case is distinguishable from cases that exclude expert testimony on the question of contractual ambiguity, because in those cases, the identification and resolution of ambiguity in an insurance policy are matters of law. He claims that Arkansas Rule of Evidence 704 allows expert testimony even if that testimony embraces the ultimate issue to be decided by the trier of fact. Finally, Elam contends that the circuit court erroneously excluded Mr. Matthews' testimony as an expert or as a lay witness for Elam but allowed Dr. Charles Bowden, a psychiatrist, to testify for First Unum that "mental disorder" is not ambiguous from a medical standpoint. This error, according to Elam, was compounded by the court by allowing Sue Griffin to testify for First Unum about what a "regular person" would understand the term "mental illness" to mean.

■ This court has long recognized that the admissibility of expert testimony rests largely within the broad discretion of the trial court and that an appellant bears the burdensome task of demonstrating that the trial court abused its discretion. *See, e.g.,*

*Collins v. Hinton*, 327 Ark. 159, 937 S.W.2d 164 (1997). Expert testimony is governed by Arkansas Rules of Evidence 701-706. The rules pertinent to this appeal are Rules 701-704. Rule 701 relates to opinion testimony by lay witnesses and reads:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are
>
> (1) Rationally based on the perception of the witness; and
>
> (2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.

Ark. R. Evid. 701. Rule 702 concerns expert testimony and reads:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Ark. R. Evid. 702. Rule 703 concerns the basis of expert witness testimony and reads:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Ark. R. Evid. 703. Rule 704 concerns opinions on the ultimate issue and reads: "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Ark. R. Evid. 704.

We first address the proffered testimony of attorney Gail Matthews as an expert on the ambiguity of the term "mental illness." We hold that the circuit court did not abuse its discretion in excluding the proffered testimony of Mr. Matthews which would have amounted to his opinion as a lawyer about whether the term "mental illness" was ambiguous. It is true that in his

deposition, Mr. Matthews gave both a "non-legal" opinion and a "legal" opinion on this issue, but he admitted on cross-examination that his "expertise" was based on his years of experience in the law practice.

 We initially observe that Elam cites no authority from this or any foreign jurisdiction where an attorney has been permitted to give the jury an opinion as a lawyer on what a term in an insurance contract means. We believe there is a reason for that. We conclude that such testimony would be unduly confusing to the jury and would invade the role of the circuit court in instructing the jury on the operative law. In the one case cited by First Unum in opposition to Mr. Matthews' testimony, this court took a dim view of attorneys' testifying as expert witnesses and giving their opinions about the issue of the excessiveness of the damages awarded in a tort case. *See Byrd v. Dark*, 322 Ark. 640, 911 S.W.2d 572 (1995). We said in *Byrd*:

> .... The two attorneys were called as witnesses and gave their opinions with respect to the value of the Byrds' case. We agree with the Byrds that this practice cannot be countenanced and must be discouraged. Attorneys are advocates and their individual experiences in the courtroom do not equip them to speculate on the excessiveness of damages in a particular case. That is a matter for the trier of fact to determine. Though we do not reverse this case based on this testimony by the attorneys, we will entertain this point as grounds for reversal in the future.

322 Ark. at 646, 911 S.W.2d at 575. We hold that the circuit court did not abuse its discretion in disallowing Mr. Matthews' testimony.[2]

 With respect to Dr. Charles Bowden's testimony, we agree with First Unum that the circuit court did not abuse its discretion in permitting the testimony. As already related, the issue confronting the jury was whether the term "mental illness" was

---

[2] In response to the dissent, though the trial court did designate Sid McMath as an expert on insurance claims handling in *Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 47 S.W. 3d 86 (2001), that issue was not before us on appeal. What the trial court forbade in *Dodson*, which this court affirmed, was testimony by McMath regarding a summary of Allstate's claims manuals prepared by someone else. Moreover, the trial court disallowed testimony by McMath "on various issues involving conclusions as to law," which was also an issue not raised on appeal. *Dodson*, 345 Ark. at 453, 47 S.W. 3d at 882.

ambiguous in Elam's insurance policy based upon disputed extrinsic evidence, which included the opinions of those in the medical field, such as Dr. Bowden. The opinion testimony of Dr. Bowden was precisely the kind of medical testimony envisioned by this court in *Elam I.*

■ Sue Griffin, a representative of First Unum, was also permitted to give her opinion as to whether she believed the term "mental illness" was ambiguous. Ms. Griffin was the representative of a party. As such, the circuit court operated well within its discretion in allowing Ms. Griffin to give her opinion of what the term "mental illness" meant. She testified that "mental illness" means what "a regular person would understand mental illness to mean." We discern no error in the circuit court's allowing this testimony.

### III. Plan Documents

■ Elam contends that the circuit court abused its discretion in allowing the jury to consider plan documents that were prepared by the parent company of Elam's employer to explain insurance benefits to its employees and, according to Elam, that incorrectly described the disability policy. The danger in this evidence, according to Elam, was that the jury was likely to be unduly influenced by these documents. First Unum responds that these documents merely describe insurance coverages and were in no way prejudicial. We agree that allowing these plan documents into evidence fell within the court's discretion, and this discretion was not abused. The evidence showed that Elam reviewed the plan documents before and after enrolling with First Unum for the insurance in question. The documents, therefore, were probative of the meaning of "mental illness," as used in the policy and as understood by Elam.

### IV. 1980 Application

■ Elam maintains that the circuit court erroneously excluded Smith-Barney-Shearson's predecessor's 1980 application for an insurance policy, because it was directly traced to Elam's policy, and it contained a "No Mental and Nervous Limitation." Elam also contends that First Unum carries the burden of showing that his policy has been legally modified. Again, the decision of whether to admit relevant evidence rests in the sound discretion of

the trial court, and our standard of review is whether the trial court abused its discretion. *See, e.g., NationsBank, N.A. v. Murray Guard, Inc.*, 343 Ark. 437, 36 S.W.3d 291 (2001). We conclude that the circuit court did not abuse its discretion.

Arkansas Rule of Evidence 403 states that a court may exclude relevant evidence if it is prejudicial, confusing, or is a waste of time. Elam did not enroll for his coverage with First Unum until 1993. Accordingly, we question the relevancy of a 1980 application form. Regardless, we are convinced that a 1980 application would be confusing to the jurors and would not help them determine whether the term "mental illness" in Elam's policy was ambiguous based on the disputed extrinsic evidence. There was no abuse of discretion by the circuit court on this point.

## V. Directed Verdict for Elam

Elam claims that the circuit court erroneously failed to grant his motion for directed verdict, because all the experts and witnesses agreed on the nature of bipolar affective disorder. First Unum responds that the circuit court properly denied Elam's directed verdict motion, because disputed evidence was presented at trial concerning the meaning of "mental illness." For example, Dr. Bowden testified that bipolar affective disorder is a biological disease of the brain; Dr. Don Martin testified that bipolar affective disorder is a mood disorder and a mental illness; and Dr. Larry Miller testified that bipolar affective disorder is classified as a mental illness and a disease of the brain.

The circuit court did not err in refusing to grant Elam's directed-verdict motion. The extrinsic evidence clearly was not all in accordance with Elam's position that bipolar affective disorder is biological and not a mental illness. As such, the issue was properly submitted to the jury. There was no error by the circuit court in this regard.

## VI. Pro Se Motions

Elam next argues that the circuit court abused its discretion by denying posttrial *pro se* motions submitted by Elam's guardian to set aside the judgment based on New York law. First Unum responds that this issue was waived for failure to comply with Arkansas Rule of Civil Procedure 44.1, regarding notice of intent to raise the law of a foreign jurisdiction. Moreover, First Unum claims that this issue was not raised until after the jury verdict.

■ The circuit court did not abuse its discretion in denying Elam's posttrial motions concerning Ark. Code Ann. § 4-8-110 (Repl. 2001), and New York insurance contract statutes. These matters were not raised or considered at trial, and the circuit court was not required to consider the law of a foreign jurisdiction which was not brought to its attention. *See, e.g., Overton Constr., Inc. v. First State Bank*, 281 Ark. 69, 662 S.W.2d 470 (1983) (trial court did not abuse its discretion by accepting appellee's notice under Ark. R. Civ. P. 44.1 that it was relying on foreign law, which was submitted "before judgment").

■ Regarding First Unum's cross appeal, which concerns Elam's alleged LSD usage, we find it unnecessary to address this issue as we are affirming the judgment in favor of First Unum.

Affirmed.

GLAZE, J., not participating.

THORNTON, J., dissents.

RAY THORNTON, Justice, dissenting. Because I believe that Gail Matthews should have been permitted to testify as an expert witness on the issue of whether the term, "mental illness," as it is used in the policy is ambiguous as it applies to Mr. Elam's bipolar affective disorder, I must respectfully dissent.

This appeal stems from an earlier decision entered by this court. *Elam v. First Unum Life Ins. Co.,* 346 Ark. 291, 57 S.W.3d 165 (2001). In the earlier appeal, we were asked to determine whether the trial court properly granted First Unum's motion for summary judgment. *Id.* The trial court granted First Unum's motion for summary judgment because it concluded that the definition of "mental illness" provided in First Unum's disability policy was unambiguous. On appeal, following the entry of summary judgment, we held:

> We therefore reverse the trial court's judgment and remand for the jury to resolve whether, based on the disputed extrinsic evidence offered by the parties, the term "mental illness," as it is used and defined in the policy, is ambiguous as it applies to Elam's diagnosis of bipolar affective disorder.

*Id.*

Based on the foregoing language, I believe that we delegated to the jury the responsibility of making a determination that is usually performed by a trial judge. Specifically, we directed the

jury to consider a mixed question of law and fact to determine on the basis of extrinsic evidence whether the term, "mental illness," as it was used in First Unum's policy, was ambiguous.

At trial, the judge admitted the testimony of Dr. Charles Bowden and Susan Griffin as extrinsic evidence on the issue of whether the term, "mental illness," was ambiguous. Their testimony was introduced by First Unum over Mr. Elam's objection. Dr. Bowden's testimony was given from a medical professional's point of view. Ms. Griffin, an employee of First Unum, discussed the issue from what she characterized as a "regular person['s]" point of view. Although the testimony from Dr. Bowden and Ms. Griffin was admitted as extrinsic evidence to assist the jury in determining whether the term, "mental illness," was ambiguous, the trial court ruled that similar extrinsic evidence offered by Mr. Elam through the testimony of Gail Matthews was inadmissible.

Mr. Elam intended to use the testimony of Gail Matthews, a local attorney, as extrinsic evidence to establish that the policy language was ambiguous. According to Mr. Matthews's proffered deposition testimony, he was an expert "in the area of insurance coverages and their meanings." He further explained that he was an "expert in the interpretation of insurance policies." The admission of Mr. Matthews's testimony would have been in accordance with *Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 47 S.W.3d 866 (2001), in which the jury was permitted to consider the testimony of Sidney McMath, an attorney, who was qualified as an expert in handling insurance claims.

Mr. Matthews was not permitted to testify. If he had been permitted to testify at trial, Mr. Matthews intended to testify regarding: (1) his experience as an attorney litigating insurance cases; (2) his understanding of what constitutes an ambiguity; (3) his opinion as to whether there was an ambiguity in the insurance policy; and (4) cases from other jurisdictions in which the disputed policy language was found to be ambiguous.

After reviewing Mr. Matthews's proffered testimony, I believe that the trial court abused its discretion by excluding the evidence while allowing First Unum's witnesses to present testimony. We remanded this case for a jury determination of whether the term, "mental illness," was ambiguous. As previously noted, this determination is a mixed question and fact and law. In our opinion, we noted that in making this determination the jury would have to consider extrinsic evidence. Mr. Matthews's testi-

mony would have assisted the jury in its determination of whether the term, "mental illness," as it is used in the policy, is ambiguous. Specifically, I believe that Mr. Matthews's expert testimony would have greatly benefitted the jury in its determination of whether the policy language was legally ambiguous. Because Mr. Matthews's proffered testimony went to the threshold issue in the case, I conclude that Mr. Elam was prejudiced by the exclusion of this testimony from his trial.

I respectfully dissent.