2010 Ark. App. 274
**Paul SCHMIDT, Appellant**

v.

**Gary STEARMAN, Sr., Appellee.**

**No. CA 09–1126.**

Court of Appeals of Arkansas.

March 31, 2010.

256

Harry E. McDermott III, Fayetteville, for appellant.

John C. Everett, Randall Wakefield, Everett & Wales, Fayetteville, for appellee.

JOHN B. ROBBINS, Judge.

This is the second appeal in this case. Appellant Paul Schmidt brought an action against appellee Gary Stearman, Sr., for conversion, trespass, and the tort of outrage. In the first trial, the trespass and outrage counts were dismissed by directed verdict, and the conversion count went to a jury, which found in favor of Mr. Stearman. Mr. Schmidt appealed, seeking a new trial on his conversion claim, and reversal of the directed verdicts on trespass and outrage. Mr. Schmidt further assigned error to the trial court's exclusion of certain evidence and its refusal to give two of his proffered jury instructions.

In the first appeal, *Schmidt v. Stearman*, 98 Ark. App. 167, 253 S.W.3d 35 (2007), we affirmed the directed verdicts on trespass and outrage, and we also affirmed the trial court's evidentiary rulings and refusal to give the proffered jury in-

structions. However, we reversed and remanded for a new trial on Mr. Schmidt's conversion action on the basis that the elements of conversion were proven beyond dispute, and thus the jury's verdict in favor of Mr. Stearman was not supported by substantial evidence. We recognized in the first appeal that there was evidence that the converted property had been returned to Mr. Schmidt, but we nonetheless held that this would not have negated the conversion. We explained:

> Thus, the jurors in this case, if they gave credence to the Stearmans' return of the property, were constrained to fill out their verdict form in favor of Schmidt on conversion but award a reduced amount, possibly zero, in damages. The return of property could not support the jury's outright finding in favor of Stearman, which amounts to a finding that no conversion took place.

98 Ark. App. at 177, 253 S.W.3d at 43.

Pursuant to our instructions on remand, a new trial was held only on Mr. Schmidt's conversion claim. At the conclusion of the second jury trial, the jury found in favor of Mr. Schmidt on his conversion claim and awarded $500 in compensatory damages and $1000 in punitive damages. Unsatisfied with these awards, Mr. Schmidt now brings this second appeal.

For reversal, Mr. Schmidt raises three arguments. First, he argues that the trial court erred in precluding him from introducing evidence of the fair market value of his five dogs and that Mr. Stearman had shot and killed them on the property where the conversion occurred. Next, Mr. Schmidt takes issue with some of the trial court's comments made in the presence of the jury. Finally, Mr. Schmidt contends that the trial court erred in allowing jury instructions on the statutes pertaining to unlawful detainer and criminal possession of real property. We affirm.

We set forth the elements of conversion in our first opinion as follows:

> Conversion is a common-law tort action for the wrongful possession or disposition of another's property. *Buck v. Gillham*, 80 Ark. App. 375, 96 S.W.3d 750 (2003). The tort of conversion is committed when a party wrongfully commits a distinct act of dominion over the property of another that is inconsistent with the owner's rights. *Id.* The intent required is not conscious wrongdoing but rather an intent to exercise dominion or control over the goods that is in fact inconsistent with the plaintiff's rights. *Id.* A person can be held liable to the true owner of stolen personal property for conversion notwithstanding that he or she acted in the utmost good faith and without knowledge of the true owner's title. *Id.*

*Schmidt*, 98 Ark. App. at 173–74, 253 S.W.3d at 41.

The testimony in the second trial was substantially the same as the first trial with regard to Mr. Schmidt's conversion claim. Mr. Schmidt lived on a 458–acre farm in Washington County, which he leased from Farm Services Agency (FSA) for a five-year period ending in February 2003. However, Mr. Schmidt continued to occupy the property and lived in the house after expiration of the lease, pursuing administrative remedies to enforce what he believed was an agreement by FSA to allow him to repurchase the farm. Those efforts would ultimately prove unsuccessful. In July 2004, FSA quitclaimed the farm to Travis Stearman, the son of appellee, Gary Stearman. Mr. Schmidt considered this sale unauthorized and stayed on the land.

There was disputed testimony as to whether Mr. Schmidt had agreed to pay Travis Stearman rent after Travis Stearman bought the property. Mr. Schmidt denied any such agreement. However, Travis Stearman testified that Mr. Schmidt had agreed to pay $200 in monthly rent, which was never paid. As a result of the rent not being paid, Travis Stearman decided to pursue eviction proceedings against Mr. Schmidt. At his son's request, Gary Stearman hired an attorney and a process server, and the process server posted an eviction notice on Mr. Schmidt's house on February 23, 2005. The notice informed him that he must vacate within twenty days or litigation would be commenced seeking his forcible removal.

Mr. Schmidt testified that he was initially unaware of the eviction notice, and that he and his girlfriend, who also lived on the property, went on vacation. Before doing so, they left food for Mr. Schmidt's five dogs, and the dogs could drink from a nearby spring. When Mr. Schmidt returned in early or mid-April, Mr. Schmidt had to restore the electricity and water to the house, which had been cut off. It was then that Mr. Schmidt found the eviction notice. Mr. Schmidt contacted his attorney, who wrote a letter to Gary Stearman's attorney on April 15, 2005, advising that Mr. Schmidt had not agreed to pay rent, that he had a right to live on his homestead, and that he considered the sale of the property to Travis Stearman illegal.

Mr. Schmidt testified that he and his girlfriend went on another short trip and returned on April 17, 2005. When they returned, Mr. Schmidt discovered that nearly 100 items had been removed from his house. He testified that the house had been "trashed." Mr. Schmidt contacted the sheriff and expressed his suspicion that Gary Stearman was involved, but the sheriff considered it a civil matter and did not arrest Mr. Stearman. Mr. Schmidt made an itemized list of everything allegedly taken with fair-market values for each

item, and while he conceded that some of the items had been returned to him, he estimated the aggregate value of the unreturned items at $122,000.

Gary Stearnian admitted that he arranged for the personal property to be removed. However, he indicated that he did so only because it appeared that the farm had been abandoned. Gary Stearnian told his ex-wife, Teresa Stearnian, that she could help herself to any items on the property and that he intended to doze the house down. He also acknowledged that he had a mechanic remove a tie rod from an old Mack truck on the property. Mr. Schmidt estimated the value of the tie rod at $500. Mr. Stearnian testified that the only removed item that he personally had in his possession was the tie rod, and that when he found out that Mr. Schmidt was still living there he advised the sheriff that all of the items would be returned to Mr. Schmidt.

Teresa Stearnian testified that she took three truck loads of personal property from the farmhouse based on Gary Stearman's representation that the property had been abandoned. Ms. Stearnian stated that when she went there the house appeared abandoned, as there was no place to sleep or sit and it was in disarray. She said that she would not have entered the property and taken the items had she known that it was not abandoned, and that she was embarrassed when she found out that Mr. Schmidt wanted the items back. According to Ms. Stearnian, she only took about one-fourth of what Mr. Schmidt claimed had been removed, and she maintained that she returned everything that she had taken.

In the previous trial, Gary Stearman testified that, upon finding the property in what he thought was an abandoned condition, he shot and killed Mr. Schmidt's five dogs. He explained that he killed the dogs because he did not want to see them starve, and also because he feared that the dogs might turn wild and cause problems. At the conclusion of the first trial, the trial court granted Mr. Stearman's motion for directed verdict on the issue of conversion of Mr. Schmidt's dogs because Mr. Schmidt failed to introduce any evidence of the value of the dogs. This directed verdict was not challenged in the first appeal.

In this appeal, Mr. Schmidt's first argument is that the trial court erred in precluding him from introducing evidence of the fair market value of his dogs and the fact that Mr. Stearman shot and killed them. Prior to trial, Mr. Stearman filed a motion in limine to exclude such evidence, and the trial court granted the motion. The trial court reasoned that because a directed verdict was entered in the first trial on the issue of the conversion of the dogs, and that the directed verdict was not appealed, the conversion of the dogs could not be relitigated in the second trial. The trial court further excluded evidence about the shooting of the dogs pursuant to Arkansas Rule of Evidence 403, on the basis that any probative value of the evidence was substantially outweighed by the danger of unfair prejudice.

A trial court is accorded wide discretion in evidentiary rulings, and will not be reversed on such rulings absent an abuse of discretion. *Arthur v. Zearley*, 337 Ark. 125, 992 S.W.2d 67 (1999). Mr. Schmidt proffered evidence of the fair market value of his dogs, and asserts that the trial court abused its discretion in refusing to admit such evidence along with the fact that Mr. Stearman killed them. Mr. Schmidt concedes that at the conclusion of the first trial the trial court properly directed a verdict as to conversion of the dogs because there was no evidence of the value of the dogs. However, he maintains that this does not preclude such proof on

retrial, because the evidence and testimony at the second trial may differ from that of the first trial. In addition to proving his conversion claim as to the dogs, Mr. Schmidt argues that this evidence should have been admitted on the issue of punitive damages to show Mr. Stearman's malicious intent. Moreover, Mr. Schmidt submits that evidence of the shootings was relevant to show that he was afraid of Mr. Stearman and explained why he moved out of the farmhouse after the conversion.

■ We hold that the trial court properly refused to allow Mr. Schmidt to pursue his conversion claim regarding his dogs in the second trial because that issue was foreclosed by the law-of-the-case doctrine. The doctrine of law of the case prohibits a court from reconsidering issues of law and fact that have already been decided on appeal. *Linder v. Linder*, 348 Ark. 322, 72 S.W.3d 841 (2002). The doctrine serves to effectuate efficiency and finality in the judicial process. *Id.* It provides that a decision of an appellate court establishes the law of the case for trial upon remand and for the appellate court itself upon subsequent review. *Id.* On the second appeal, the decision of the first appeal becomes the law of the case and is conclusive of every question of law or fact decided in the former appeal, and also those that might have been, but were not, presented. *Id.*

In the first jury trial a directed verdict was entered against Mr. Schmidt concerning his claim of conversion of his dogs. He appealed from the order arising from the first jury trial, raising multiple arguments but not challenging the directed verdict as to conversion of the dogs. Therefore, this issue was conclusively decided and could not be relitigated on remand in the second jury trial.

■ Furthermore, we do not agree that the trial court abused its discretion in finding that any relevance in Mr. Stearman's shooting of the dogs was substantially outweighed by the danger of unfair prejudice. Mr. Schmidt contends that the shootings were relevant on the issue of punitive damages. However, in the absence of an award of compensatory damages for the underlying cause of action, punitive damages are improper. *Bell v. McManus*, 294 Ark. 275, 742 S.W.2d 559 (1988). Because Mr. Schmidt was not entitled to any compensatory damages on his claim for conversion of the dogs, neither could he recover any punitive damages for that claim. And we fail to see the relevance of Mr. Schmidt's alleged fear of Mr. Stearman or Mr. Schmidt's decision to vacate the farmhouse as regards this conversion action. Evidence that Mr. Stearman killed the dogs would have been prejudicial, and we hold that the trial court did not abuse its discretion in excluding the evidence on its finding that any relevance was substantially outweighed by the prejudice.

Mr. Schmidt's second argument is that the trial court made objectionable comments in the presence of the jury that warrant reversal. During redirect examination of Mr. Schmidt, he was asked whether he thought he had a legal right to be on the property. Mr. Stearman objected to the question, saying that it was clear as a matter of law that Mr. Schmidt had no right to be there. The trial court overruled Mr. Stearman's objection, and stated, "Well, I'm going to let him testify if he thought he had a right to be there.... But the property has been sold and he hasn't paid any rent on it and ... I don't think he had a legal right that has been shown to this court to be there. But go ahead."

Mr. Schmidt challenges the trial court's comments, citing *West v. State*, 255 Ark. 668, 672, 501 S.W.2d 771, 774 (1973), where the supreme court wrote:

In a jury trial there is probably no factor that makes a more indelible impression on a juror than the attitudes, statements and opinions of the trial judge. To them, his word is the law. The trial judge should always preside with impartiality and must be cautious and circumspect in his language for it is the jury that is the sole judge of the facts and the credibility of witnesses. Because of his influence with the jury, remarks by the trial judge may tend to prejudice a litigant by destroying the weight and credibility of testimony in his behalf in the minds of the jury. Although the judge may not intend to give an undue advantage to one party, his influence may quite likely produce that result. (Citations omitted.)

Mr. Schmidt asserts that the trial court's comments were improper, and that the comments intimated to the jury that Mr. Schmidt's testimony as to why he was on the property was of little, if any, value.

We hold that Mr. Schmidt's challenge to the trial court's comments is not preserved for review because he made no objection at trial. A contemporaneous objection is required to preserve an issue for appeal. *Fields v. State*, 349 Ark. 122, 76 S.W.3d 868 (2002). It was Mr. Schmidt's burden to ask for a curative instruction. *See Smith v. State*, 351 Ark. 468, 95 S.W.3d 801 (2003). Moreover, a mistrial motion is to be requested when the error is beyond repair and cannot be corrected by any curative relief. *Robinson v. State*, 363 Ark. 432, 214 S.W.3d 840 (2005). In the present case, Mr. Schmidt did not request an admonition or a mistrial when the trial court made its comments, nor did he make any objection that the trial court's comments were an improper comment on the evidence. Therefore, this argument is not preserved and we need not address it.

Mr. Schmidt's remaining argument is that the trial court erred, over his objection, in giving jury instructions on the unlawful detainer statute and the criminal possession of real property statute. These jury instructions provided:

A person shall be guilty of an unlawful detainer if the person shall, willfully and without right, peaceably and lawfully obtain possession of any property and hold it willfully and unlawfully after demand made in writing for the delivery or surrender of the possession thereof by the person having the right of possession, his or her agent or attorney.

. . . .

Any person who shall rent any dwelling house or other building or any land situated in the State of Arkansas and who shall refuse or fail to pay the rent therefore when due according to contract shall at once forfeit all right to any longer occupy the dwelling house or other building or land.

If, after ten days' notice in writing shall have been given by the landlord or the landlord's agent or attorney to the tenant to vacate the dwelling house or other building or land, the tenant shall willfully refuse to vacate and surrender the possession of the premises to the landlord or the landlord's agent or attorney, the tenant shall be guilty of a misdemeanor.

A party is entitled to a jury instruction when it is a correct statement of the law, and there is some basis in the evidence in giving the instruction. *Pettus v. McDonald*, 343 Ark. 507, 36 S.W.3d 745 (2001). Mr. Schmidt contends that these instructions were erroneously given because Mr. Stearman never filed an unlawful detainer action, nor were any criminal charges filed against Mr. Schmidt.

We will not reverse a trial court's decision to give a jury instruction unless

the trial court abused its discretion. *Graftenreed v. Seabaugh,* 100 Ark. App. 364, 268 S.W.3d 905 (2007). We hold that there was no abuse of discretion in giving the two instructions at issue here. These instructions were correct statements of the law as they tracked the statutory language of Ark.Code Ann. §§ 18–60–304(2) and 18–16–101(a) and (b)(1) (Repl.2003). Moreover, there was some basis in the evidence to give these instructions because the lawfulness of the respective parties' legal right to possess the real property bore on the issue of punitive damages. The evidence did not demonstrate that an unlawful detainer action or misdemeanor charges were ever filed against Mr. Schmidt, and this was emphasized in Mr. Schmidt's counsel's closing argument to the jury. But it is evident that there may have been grounds for such civil or criminal proceedings given the evidence adduced at trial, and we affirm the trial court's decision to give the jury instructions.

Affirmed.

HART and HENRY, JJ., agree.