# United States Court of Appeals

### For the Eighth Circuit

_____

No. 14-2575

_____

Jerry Friedman; FM Service Equipment Group, Inc.

*Plaintiffs - Appellants*

v.

Kelly Farmer, individually and in his capacity as an officer of Arkat Nutrition, Inc.; John Farmer, individually and in his capacity as an officer of Arkat Nutrition, Inc.

*Defendants - Appellees*

Arkat Nutrition, Inc.

*Defendant*

Ainsworth Pet Nutrition, Inc.; John Doe

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff

_____

Submitted: April 14, 2015
Filed: June 11, 2015

_____

Before MURPHY, COLLOTON, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Jerry Friedman, a California resident, and FM Service Equipment Group, Inc., a California corporation,[1] sued two Arkansas corporations and two employees of one of those corporations for breach of contract, promissory estoppel, unjust enrichment, conversion, and other tort claims. See 28 U.S.C. § 1332. The district court[2] granted summary judgment in favor of the defendants, and Friedman appeals. We affirm the judgment.[3]

## I. Background

The following facts are recounted in the light most favorable to Friedman, the non-moving party. See Jackson v. Allstate Ins. Co., — F.3d ----, 2015 WL 2115528, at *5 (8th Cir. May 7, 2015). Kelly Farmer is the founder of Arkat Nutrition, Inc. (Arkat Nutrition), an Arkansas Corporation formed in 1989. Arkat Nutrition owned a feed mill in Arkansas known as Plant One. Kelly's son, John Farmer, worked at Arkat Nutrition and was in charge of overseeing production of milling operations at Plant One. Arkat Land Company (Arkat Land) is a limited liability company also located in Arkansas. Arkat Land owned a separate feed mill known as Plant Two, though it leased Plant Two to Arkat Nutrition, which used both plants to produce animal feed.

---

[1]Friedman formed FM Service Equipment Group, Inc., for the purposes of completing the oral contract that is the basis of this lawsuit. Thus, for ease of understanding, we will refer to the plaintiffs collectively as "Friedman."

[2]The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas.

[3]We have jurisdiction over this appeal under 28 U.S.C. § 1291.

In February 2007, a tornado damaged Plant One. Arkat Nutrition decided not to repair the plant because the equipment inside had little useful life left. A third-party company cleaned up the debris from the tornado but left some scrap with potential value. Later in 2007, Friedman made an oral deal with the Farmers: He would act as a broker for Arkat Nutrition to solicit offers for the remaining equipment from Plant One. According to Friedman, any sale amount he brokered above $1.9 million would go to him as a broker's fee. Friedman says he "had the exclusive right to contact all potential buyers"; Arkat Nutrition says Friedman was a "non-exclusive broker" and that "it was understood that Arkat Nutrition could also continue to attempt to find a buyer on its own." Friedman successfully sold some of the equipment to Mid America Pet Food, LLC, and received a commission of $25,000. Friedman also alleged that he purchased a palletizer[4] from Arkat Nutrition for $1000. He dismantled the palletizer and left it at Plant One, where it remained for at least two years.

In 2010, Arkat Nutrition and Arkat Land transferred most of their assets to a newly formed company, Arkat Animal Nutrition, LLC (Arkat Animal Nutrition), the equity interests of which would then be sold to Dad's Products Company, Inc. (Dad's Products). Dad's Products, however, was not to be responsible for any investor claims or third-party claims for which Arkat Animal Nutrition was liable. According to the Farmers, that sale had been contemplated since 2002, long before Friedman's oral deal. The sale was completed in February 2010, and shortly after Dad's Products changed its name to Ainsworth Pet Nutrition, Inc. (Ainsworth). After the sale, Ainsworth hired a third-party company to remove any remaining scrap from Plant One; that company paid Ainsworth less than $10,000 to keep the scrap. Arkat Nutrition continued to exist only to collect proceeds from an earlier sale of some

---

[4]A palletizer is a piece of equipment that Arkat Nutrition used to stack bags of animal feed onto pallets.

Plant One equipment not sold by Friedman. Arkat Animal Nutrition also briefly continued to exist as a subsidiary of Ainsworth before merging into it.

After the sale to Ainsworth, Friedman brought this lawsuit. He alleged that he had "expended considerable resources" to find potential buyers for the Plant One equipment and had offered "all of the equipment" to one potential buyer for $2.9 million. Friedman said he did not learn until December 2010 that Arkat Nutrition had been sold. He also asserted, however, that the deal was modified so that he would receive any amount paid above $1.5 million, though he did not say when that modification occurred. He alleged claims for breach of contract, tortious interference with a contract, unjust enrichment, promissory estoppel, and conversion (for the palletizer, which he alleges wrongly was sold to Ainsworth). He sought declaratory judgment and $1 million in owed commission.

Friedman later moved to amend the complaint to add claims against Arkat Land. Ainsworth cross-claimed for indemnity and contribution against the Farmers and Arkat Nutrition, who together filed their own cross-claim for the same against Ainsworth. Each defendant also moved for summary judgment on all of Friedman's claims.

The district court denied Friedman's motion to amend because the proposed amended complaint did not add Arkat Land as a plaintiff but added only allegations regarding that company. Those added allegations, the court ruled, "fall far short of alleging facts" showing that Arkat Land is the "alter ego" of Arkat Nutrition. The court noted that, if properly alleged, the alter-ego theory could have justified holding Arkat Land liable for the wrongdoing of Arkat Nutrition; but the amended complaint failed to assert this theory in even a conclusory form. And even if Friedman had properly alleged claims against Arkat Land as a separate entity, the court explained, those claims would be untimely, and the amendment would be futile.

The district court later ruled on the defendants' motions for summary judgment. The court granted summary judgment in part and denied it in part for Arkat Nutrition on the claims for breach of contract and promissory estoppel; but the court granted judgment in full for the Farmers on these claims and on Friedman's claim for tortious interference with contract. The court ruled in favor of all defendants on the claims of unjust enrichment and conversion.[5]

The district court then set a trial date for Friedman's breach of contract and promissory estoppel claims against Arkat Nutrition. Instead of pursuing those claims, however, Friedman jointly moved with Arkat Nutrition to dismiss with prejudice the claims against Arkat Nutrition, rendering the court's summary judgment order final and appealable. Ainsworth also moved to dismiss its cross claims against Arkat Nutrition for indemnity. The district court granted both motions and, pursuant to that order and its earlier order granting summary judgment in part, dismissed all claims by all parties.

## II. Discussion

Friedman appeals the grant of summary judgment for the defendants. In October 2014, Arkat Nutrition moved to dismiss itself and any adverse claims from this appeal because Friedman had dismissed his claims against that corporation in the district court. We granted that motion. This appeal, thus, concerns Friedman's claims against only the Farmers and Ainsworth, and he also has abandoned some of those claims.

---

[5]The district court also granted Ainsworth's cross claim for summary judgment against Arkat Nutrition on its indemnity claims.

-5-

### a. Summary Judgment Claims

This court reviews the grant of summary judgment de novo. <u>Swift & Co. v. Elias Farms, Inc.</u>, 539 F.3d 849, 851 (8th Cir. 2008). Summary judgment is inappropriate only if there is an "outcome determinative" dispute of fact producing an issue appropriate for trial. <u>Reuter v. Jax Ltd., Inc.</u>, 711 F.3d 918, 920 (8th Cir. 2013) (quotation omitted). Because this is a case under diversity jurisdiction, we apply the substantive law of the forum state (Arkansas). <u>Ashley County, Ark. v. Pfizer, Inc.</u>, 552 F.3d 659, 665 (8th Cir. 2009).

### 1. Unjust Enrichment

Friedman first argues that the district court improperly granted summary judgment for the Farmers on his claim of unjust enrichment because Friedman had a contract with Arkat Nutrition. Although he acknowledges the general rule that "there can be no unjust enrichment in contract cases," he says this case meets the "impossibility" exception to that rule because the Farmers made completion of the contract impossible.

To be unjustly enriched under Arkansas law, "a party must have received something of value, to which he or she is not entitled and which he or she must restore." <u>Campbell v. Asbury Auto., Inc.</u>, 381 S.W.3d 21, 36 (Ark. 2011). The benefitted party must have acted or intended "to make the enrichment unjust and compensable." <u>Id.</u> In other words, a person must have "received money or its equivalent under such circumstances that, in equity and good conscience, he or she ought not to retain." <u>Id.</u> Although an express contract generally precludes an action for unjust enrichment, that claim may be maintained, for example, when "a contract has been discharged by impossibility or frustration of purpose." <u>United States v. Applied Pharmacy Consultants, Inc.</u>, 182 F.3d 603, 607 (8th Cir. 1999) (quoting <u>Friends of Children, Inc. v. Marcus</u>, 876 S.W.2d 603, 605 (Ark. Ct. App. 1994)).

It is disputed whether the Farmers gave Friedman an exclusive or non-exclusive right to broker deals for the Plant One equipment. And Friedman may be right that this situation would meet an exception to the prohibition of unjust enrichment in contract cases because the oral contract no longer can be completed. But there is no evidence in the record that the Farmers received "money or its equivalent" in an unjust fashion. Friedman does not say what the unjustly received thing was; he simply asserts that the Farmers "benefitted individually, and unjustly from the actions of the Plaintiff." Ainsworth paid Arkat Animal Nutrition a considerable sum for the assets of Arkat Nutrition and Arkat Land. But there is no evidence of the worth of the equipment specifically from Plant One; by the alleged terms of the oral agreement, that equipment would have to have been sold for more than $1.5 million for Friedman to have a claim to any commission. The company that removed the Plant One equipment paid less than $10,000 for it, suggesting its worth was nowhere near $1.5 million. Moreover, Ainsworth paid Arkat Animal Nutrition for the assets including Plant One, and Arkat Animal Nutrition is not a party in this suit.

Even assuming Arkat Nutrition improperly sold its rights in the Plant One equipment to Ainsworth, and assuming that sale provided an unjust enrichment of some kind, the only claim would be against Arkat Nutrition (the corporation) and not the Farmers, who are only agents of Arkat Nutrition. As agents of the corporation, the Farmers cannot be liable to Friedman on the oral brokering contract. See Grayson & Grayson, P.A. v. Couch, 388 S.W.3d 96, 104 (Ark. Ct. App. 2012) ("[A]n agent cannot be held personally liable to a third person on a contract for a disclosed principal."). Thus, the district court properly granted summary judgment for the Farmers on this claim.

### 2. Promissory Estoppel

Friedman next argues that summary judgment was improper on his claim for promissory estoppel. He says there is a dispute of fact whether the Farmers acted with the actual authority of Arkat Nutrition. If either Farmer lacked the authority to make the brokerage promise with Friedman, he says, then the agreement between Friedman and the Farmers "would be a new or different contractual obligation binding them as an agent acting outside the scope of authority."

Friedman is correct that, if the Farmers were acting outside the scope of their authority as agents for Arkat Nutrition, they could be liable for the promise. But there is no evidence to support that claim. The Farmers provided affidavits swearing that, relevant to this case, they acted only within the scope of their authority as agents for Arkat Nutrition. Friedman did not provide counter affidavits but, instead, disagreed with various paragraphs from Kelly Farmer's affidavit. He points to one of those contested paragraphs, and his disagreement with it, as the only support for his argument that the Farmers were acting outside their authority. That paragraph refers to the "Board Minutes of Arkat Nutrition," but those minutes are not in the record.

A disagreement about those Board minutes is not a material dispute warranting reversal of the district court's judgment. See Torgerson v. City of Rochester, 643 F.3d 1031, 1052 (8th Cir. 2011) (noting that "a disputed fact alone will not defeat summary judgment, rather there must be a genuine issue of material fact"); Lower Brule Sioux Tribe v. State of S.D., 104 F.3d 1017, 1021 (8th Cir. 1997) ("[I]t is not enough that there are factual disputes between the parties, the disputes must be outcome determinative under prevailing law." (quotation omitted)). Nor does this disagreement create a genuine dispute of fact whether the Farmers were acting within the scope of their authority as agents of Arkat Nutrition. As agents of the corporation, the Farmers are not liable for the contract between Friedman and Arkat

Nutrition. <u>See</u> <u>Grayson & Grayson, P.A.</u>, 388 S.W.3d at 104. The district court properly granted the Farmers summary judgment on the promissory estoppel claim.

### 3. Conversion

Last, Friedman argues that the district court improperly granted summary judgment to the defendants on his claim for conversion. He asserts that he never abandoned the palletizer, despite leaving it in Arkansas for at least two years. Friedman asserts that, at the least, there is a question of fact whether Ainsworth converted the palletizer.

To establish liability for conversion under Arkansas law, a plaintiff must prove that the defendant wrongfully took control of another's property and denied the owner his rights to that property. <u>Hatchell v. Wren</u>, 211 S.W.3d 516, 521 (Ark. 2005). The control over the property can be for the benefit of that defendant or the benefit of another. <u>Id.</u> Abandonment, however, is a complete defense to conversion. <u>Schmidt v. Stearman</u>, 253 S.W.3d 35, 42 (Ark. Ct. App. 2007). For property to be considered abandoned, there must be "a manifest act" of the owner showing intent "to forsake his or her property." <u>Id.</u> "Property is abandoned when it has been thrown away or its possession voluntarily forsaken by the owner." <u>Id.</u>

We believe the district court properly granted summary judgment to the defendants on this claim. There is no evidence that any defendant except Ainsworth possessed the palletizer after Friedman bought it from the Farmers, and there is ample evidence that Friedman abandoned it. After buying and disassembling the palletizer sometime in 2009, Friedman did nothing with it: He did not check on it or move it to California but, instead, left it in Arkansas until at least December 2011. And though Friedman testified that he still cared about the palletizer, he left it outside (2,000 miles away in Arkansas) and allowed the disassembled pieces to rust. Moreover, Friedman never told anyone at Ainsworth, before the sale or after, that the palletizer

was his or that he eventually would remove it, even though he communicated with Ainsworth employees as early as January and February 2010. Friedman's silence about the palletizer, despite learning that Ainsworth had purchased Arkat Nutrition and everything left at Plant One, is strong evidence that he manifested an intent to abandon it. Cf. Omni Holding & Dev. Corp. v. C.A.G. Invs., Inc., 258 S.W.3d 374, 381 (Ark. 2007) (finding no clear error in trial court's conclusion that former lessee abandoned personal property left in building when lessee traveled to Greece instead of retrieving property within one-week time period given by court). We think no reasonable jury would find differently.

### b. Motion to Amend Complaint

In the proposed amended complaint, as the district court noted, Friedman does not name Arkat Land as a party or add any new claims. Instead, he simply inserts Arkat Land into three paragraphs of his original complaint without describing how that entity purportedly is related to this action. He refers to "Arkat" many other times throughout the amended complaint, but he attributes that shorthand to only Arkat Nutrition. Friedman does not refer to Arkat Land anywhere else in the complaint, not even in his claims or his prayer for relief. Friedman attempted to justify the amendment by explaining that Arkat Land was the "alter ego" of Arkat Nutrition; that is the same argument he used (unsuccessfully) to explain why the amendment should relate back and not be untimely.

We normally review the denial of a motion to amend a complaint for abuse of discretion; but because the court denied the motion on the basis of futility, the court's legal conclusions are reviewed de novo. See Zutz v. Nelson, 601 F.3d 842, 850 (8th Cir. 2010). A district court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). But leave may be denied for many reasons, including "undue prejudice to the non-moving party, or futility of the amendment." Hammer v. City of Osage Beach, 318 F.3d 832, 844 (8th Cir. 2003) (quotation

-10-

omitted). This court previously has upheld the denial of a motion to amend when the motion was filed 14 months after the original complaint and six days after the discovery cutoff date. Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 224–25 (8th Cir. 1994) (noting that addition of new defendants would cause undue prejudice and that litigant failed to justify "belatedness of her motion").

We see no abuse of discretion or error of law here. Friedman filed the motion to amend more than 14 months after he filed the original complaint, though discovery was still open. But the amended complaint added new allegations regarding different equipment located on a different piece of land (Plant Two) and owned by a different entity (Arkat Land). Friedman did not add Arkat Land as a new defendant and instead attempted to pull in that entity, and the Plant Two equipment, into his oral contract by alleging Arkat Land's involvement with the Farmers. Though Friedman testified that the "oral deal" involved only Plant One, he later asserted that John Farmer "modified" the deal to encompass any equipment at any plant, even though those plants were owned by different entities. But the original complaint says nothing about Plant Two or Arkat Land.

The new facts alleged are not relevant to those asserted in the original complaint (regarding Plant One and Arkat Nutrition); instead they relate to a separate entity not mentioned in the original complaint. See Fed. R. Civ. P. 15(c)(1)(C) (allowing relation back if new party was related to claim set out in original complaint and had notice of the action or should have known about the action but for the naming mistake). If Friedman always believed that John Farmer had "modified" the agreement to include Plant Two, then he should have alleged that in his original complaint to put Arkat Land on notice of the suit. He did not do that. Instead, he specified that the deal applied to only the equipment in the plant damaged by tornado—Plant One.

-11-

Nor does the amended complaint contain sufficient information to meet the alter-ego rationale for allowing the amendment. Friedman does not allege that Arkat Land was controlled by Arkat Nutrition "to the extent that it has independent existence in form only," or that the corporate veil was abused "to defeat public convenience, to justify wrong, or to perpetuate a fraud." Greater Kan. City Laborers Pension Fund v. Superior Gen. Contractors, Inc., 104 F.3d 1050, 1055 (8th Cir. 1997). Because the claims do not relate back, they would be untimely under Arkansas's three-year statute of limitations for each of Friedman's claims. See Ark. Code Ann. § 16-56-105(1), (6). The sale to Ainsworth occurred in February 2010; the amended complaint was filed March 4, 2014. We thus agree with the district court that the amendment would be futile. See Enervations, Inc. v. Minn. Mining & Mfg. Co., 380 F.3d 1066, 1069 (8th Cir. 2004) ("The proposed amendment was futile because, even if so amended, Count II would still be time-barred."). The court thus properly denied the motion to amend.

### III. Conclusion

For the reasons discussed above, we affirm the grant of summary judgment for the defendants and the denial of the motion to amend.

_____